# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61760-Civ-Zloch / Rosenbaum

HOLLYWOOD GREYHOUND TRACK, INC,

    Applicant,

v.

UNITE HERE LOCAL 355,

    Respondent.



## INTERVENOR MARTIN MULHALL'S MEMORANDUM IN SUPPORT OF APPLICANT'S MOTION TO VACATE AND OPPOSITION TO RESPONDENT'S MOTION TO CONFIRM THE ARBITRATION AWARD

UNITE HERE Local 355 is advancing two mutually incompatible positions in this case. On one hand, UNITE seeks enforcement of an arbitration award that requires that Mardi Gras Gaming provide the union with information about its employees, use of its property for organizing, and a gag-clause on its speech. Yet, at the same time, UNITE insists that these are not " thing[s] of value" to the union under § 302 of the Labor Management Relations Act, 29 U.S.C. § 186(a)(2).

Taken together, UNITE' s positions make no sense. The union is effectively arguing that it is suing Mardi Gras for *nothing* of value—i.e., that the information, use of property, and gag-clause it seeks are *worthless*. If this were true, UNITE' s suit must be dismissed for a lack of a case and controversy under Article III of the United States Constitution. UNITE cannot sue Mardi Gras for nothing.

Of course, UNITE is not actually suing Mardi Gras for nothing. The information, use of property, and gag-clause that UNITE seeks are exceedingly valuable to the union for organizing Mardi Gras' nonunion employees. This is why UNITE provided valuable consideration for these things. Employer assistance with organizing is as valuable to UNITE as a cash subsidy for its organizing campaign.

Section 302 of the LMRA strictly prohibits unions from receiving any " thing of value" from employers, except as permitted by § 302(c). The things UNITE demands from Mardi Gras are " thing[s] of value" under the law of this Circuit. *Cf. United States v. Moore*, 525 F.3d 1033, 1048 (11th Cir. 2008) (" term 'thing of value' unambiguously covers intangible considerations"); *United States v. Nilsen*, 967 F.2d 539, 543 (11th Cir. 1992) (control over speech of adverse party a " thing of value"); *United States v. Schiffman*, 552 F.2d 1124, 1126 (5th Cir. 1977) (discounted use of property a " thing of value" under § 302). Section 302(c) does not exempt organizing assistance from the statute' s prohibitions. Accordingly, the arbitration award requiring that Mardi Gras deliver " thing[s] of value" to UNITE for unionizing its nonunion employees is void and unlawful under § 302 of the LMRA.

-1-

## STATEMENT OF THE CASE

Martin Mulhall is employed by Mardi Gras at its racetrack-casino in Hollywood, Florida. Mulhall and his co-workers are not represented by UNITE. Nevertheless, Mardi Gras is a party to a Memorandum of Agreement (" MOA") with the union.

In the MOA, Mardi Gras agreed to assist UNITE with unionizing its employees by delivering to the union: (1) information about its nonunion employees, including their home addresses, (MOA ¶ 8); (2) free use of its property for organizing, (MOA ¶ 7); and (3) a gag-clause on any company speech or actions that state or imply opposition to the union, (MOA ¶ 4). Mardi Gras further agreed to not petition the National Labor Relations Board (" NLRB") for a secret-ballot election regarding union representation, but instead to recognize UNITE as its employees' " exclusive representative" based on union authorization cards. (MOA, ¶ 9).

In exchange for this valuable assistance, UNITE conducted a political campaign for Mardi Gras and promised the company labor peace, i.e., that it would not picket or boycott. (MOA ¶ 11). In its suit to enforce the MOA, UNITE estimated that " the time and money the Union and its members spent on the political campaign to obtain a gaming license for Mardi Gras" at " over $100,000." (Joint Sch. Rpt., * 2) (Doc. No. 23 in *UNITE HERE Local 355 v. Hollywood Greyhound Track, Inc.*, Case No. 08-61655-CIV-Seitz (S.D. Fla. 2008) (" *UNITE HERE*")). UNITE also claimed that non-enforcement of the MOA is resulting in " increased organizing expenses and lost revenues for the Union." (Compl., ¶ 10) (Doc. No. 1 in *UNITE HERE*).

On 4 November 2009, Mardi Gras instituted this action to vacate an arbitration award requiring that Mardi Gras enforce the organizing provisions of the MOA. (Doc. No. 1). UNITE counter-claimed for enforcement of the award. (Doc. No. 4). The issue presented to this Court is whether the information about nonunion employees, use of company property for organizing, and gag-clause on employer speech in opposition to unionization required by the MOA are " thing[s] of value . . . to any labor organization" under § 302(a)(2) of the LMRA.

-2-

## JURISDICTION

Section 302(e) grants Mulhall a private cause of action for injunctive relief. 29 U.S.C. § 186(e). The Supreme Court has long interpreted § 302(e) as " expressly permitting suits for injunctions . . . to be brought in the federal courts by private litigants." *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 205 n. 19 (1962), *overruled on other grounds,* 398 U.S. 235 (1970); *cf. Local 144, Nursing Home Pension Fund v. Demisay,* 508 U.S. 581, 588-88 (1993).

Court have held that employees are the proper proponents of § 302 actions.[1] Section 302 " protect[s] employees in dealings between the union and employer." *Jackson Purchase Rural Elec. Coop. Ass' n v. Int' l Bhd. of Elec. Workers*, 646 F.2d 264, 267 (6th Cir. 1981). " The Congressional intent to protect the rights of employees would be frustrated if the right to enforce compliance with § 302 were withheld from them." *Barbot v. Frackman*, 191 F. Supp. 171, 173 (S.D.N.Y. 1961).

Section 302(e)' s text makes clear that employees have a private cause of action by authorizing civil actions " without regard to the provisions of . . . section 52 of this title." 29 U.S.C. § 186(e). Section 52 applies *only* to suits between " employees" and " employers." 29 U.S.C. § 152. The inclusion of this exemption to § 52 proves that employees are the intended litigants of private civil actions under § 302(e).

## ARGUMENT

UNITE does not methodically analyze § 302, but instead proffers a hodgepodge of arguments. A careful evaluation of the statute establishes that enforcing § 302 against " thing[s] of value" for organizing: (1) is required by the plain language of the statute; (2) is consistent with § 302' s legislative purpose; and (3) leads to no absurd results. As discussed in Section IV, the conclusions of the Third and Fourth Circuits to the contrary are in conflict with the law of this Circuit and other courts.

---

[1] *See Copra v. Suro*, 236 F.2d 107, 114 (1st Cir. 1956); *Employing Plasterers' Ass' n v. Journeymen Plasterers Prot. & Benevolent Soc' y*, 279 F.2d 92, 99 (7th Cir. 1960); *Schwartz v. Assoc. Musicians, Local 802*, 340 F.2d 228, 233 (2d Cir. 1964).

-3-

## I. UNITE's Demands For "Thing[s] of Value" For Organizing Violate the Plain Language of § 302

A. *The Text of § 302 of the LMRA*

"As is true in every case involving the construction of a statute, [the] starting point must be the language employed by Congress." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337 (1979). "When . . . the terms of a statute [are] unambiguous, judicial inquiry is complete except in rare and exceptional circumstances." *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991). Section 302(a)(2) unambiguously states that:

> It shall be unlawful for any employer . . . to pay, lend, or deliver, any money or other thing of value . . . to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer.

29 U.S.C. § 186(a)(2). Section 302(b)(1) reciprocally makes it unlawful for unions to "request, demand, receive, or accept . . . any money or other thing of value prohibited by subsection (a)." *Id.* at § 186(b)(1). Section 302(c) states nine exceptions to the prohibitions of §§ 302(a) and (b), none of which apply here.

"[A] literal construction of § 302 does no violence to common sense." *Arroyo v. United States*, 359 U.S. 419, 424, 79 S. Ct. 864, 867 (1959). The statute strictly prohibits employers from delivering *anything of value* to unions or their officials, *except* as permitted by § 302(c). This is the interpretation that Congress intended,[2] and is how the Supreme Court and Eleventh Circuit construe § 302.[3]

---

[2] *See* H.R. Rep. No. 86-741 (1959), *reprinted* 1959 U.S.C.C.A.N. 2318, 2469 ("it is illegal for an employer to pay or deliver *anything of value* to a representative of his employees, *except* in those instances permitted by subsection (c)").

[3] *See United States v. Sun-Diamond Growers,* 526 U.S. 398, 409 (1999) (Section 302 "makes it a felony for an employer to give to a union representative . . . anything of value,"); *United States v. Ryan,* 350 U.S. 299, 305 (1956) (Section 302 is "a criminal provision, malum prohibitum, which outlaws all payments, with stated exceptions, between employer and representative"); *United States v. Browne,* 505 F.3d 1229, 1248 (11th Cir. 2007)(Section 302 "prohibits employers . . . from
(continued...)

-4-

The Supreme Court has repeatedly held that § 302's "prohibitions . . . are drawn broadly." *Demisay*, 508 U.S. at 585 (1993); *see also Ryan*, 350 U.S. at 304-05; *Arroyo*, 359 U.S. at 420. "Congress gave the broadest possible scope to the statute by adding to the word 'money' the words 'or other thing of value,' " because " favors may be conferred in many ways under many circumstances." *United States v. Roth*, 333 F.2d 450, 453 (2d Cir. 1964). Legislative history supports this broad construction of "thing of value."[4]

The Eleventh Circuit recognizes that "thing of value" is a " term of art," *United States v. Nilsen*, 967 F.2d 539, 543 (11th Cir. 1992), and " that the term 'thing of value' unambiguously covers intangible considerations." *United States v. Moore*, 525 F.3d 1033, 1048 (11th Cir. 2008) (quoting *Nilsen*, 967 F.2d at 542).

> This broad interpretation is based upon a recognition that monetary worth is not the sole measure of value. [*Nilsen* at 542-43] (*citing United States v. Schwartz*, 785 F.2d 673, 679 (9th Cir. 1986)). " The conduct and expectations of both the defendant and the subject of the extortionate threat also can establish whether an intangible objective is a 'thing of value.' " *Id.* at 543 (*citing United States v. Zouras*, 497 F.2d 1115, 1121 (7th Cir. 1974)).

*Id.* at 1048; *see also Nilsen*, 967 F.2d at 543 (similar). The Second, Fifth, Sixth, Seventh, Eighth, Ninth, and D.C. Circuits have similarly held that " thing of value"

---

[3](...continued)

paying anything of value to labor organizations or their officials, and conversely prohibits labor representatives from receiving anything of value from employers"); *see also Costello v. Lipsitz*, 547 F.2d 1267, 1272-73 (5th Cir. 1977); *United States v. Quinn*, 514 F.2d 1250, 1259 (5th Cir. 1975).

[4] *See* 92 Cong. Rec. 4900 (Sen. Pepper) (" under the language of the amendment, it would be unlawful for any representatives of employees . . . to receive *anything of benefit or value* from the management"); 92 Cong. Rec. 4895 (Sen. Wheeler) (" This language clearly goes so far as to make the employer guilty of violation of the law if he contributed *anything to the union for the benefit of the union*."); S. Rep. No. 86-187 (1959), *reprinted* 1959 U.S.C.C.A.N. 2318, 2329 (§ 302 intended to be " applicable to *all forms* of extortion or bribery in labor-management relations") (emphasis added in all).

is a broad term that encompasses services and intangibles.[5]

    B. *Information, Use of Property, and a Gag-Clause Are "Thing[s] of Value"*

    The three things that UNITE seeks from Mardi Gras are each a " thing of value." *Cf. Schwartz*, 785 F.2d at 679-81 (holding that " assistance in arranging for the merger of [two unions], as well as other services," are a " thing of value" to union officials under 18 U.S.C. § 1954). Indeed, unions and almost other every organization use information, property, and communications.

    **Information**. UNITE demands lists of information about Mardi Gras' nonunion employees. The information has value to UNITE because it will allow the union to target employees during an organizing campaign and send union organizers to their homes. A list of prospective employees to unionize is as valuable to a union as a list of prospective customers is to a business.

    The Second, Sixth, and Ninth Circuits have held that information is a " thing of value" under other statutes. *See Girard*, 601 F.2d at 71; *United States v. Barger*, 931 F.2d 359, 368 (6th Cir. 1991); *United States v. Sheker*, 618 F.2d 607, 609 (9th Cir. 1980). Indeed, " [c]onfidential business information has long been recognized as property." *Carpenter v. United States*, 484 U.S. 19, 26 (1987).

    **Property**: UNITE demands use of Mardi Gras' property for organizing. Use of physical facilities is a quintessential property right used by all organizations. It is a " thing of value" under any possibly meaning of that term. *See NLRB v. BASF Wyandotte Corp.*, 798 F.2d 849, 856 & n.5 (5th Cir. 1986) (union use of company offices a " thing of value" under § 302(a), but exempted by § 302(c)(1) because union officials were employees); *United States v. Schiffman*, 552 F.2d 1124, 1126 (5th Cir.

---

    [5] *See United States v. Girard*, 601 F.2d 69, 71 (2d Cir. 1979); *United States v. Marmolejo*, 89 F.3d 1185, 1191 (5th Cir. 1996); *United States v. Jeter*, 775 F.2d 670, 680 (6th 1985); *United States v. Gorman*, 807 F.2d 1299, 1305 (6th Cir. 1986); *Zouras*, 497 F.2d at 1121 (7th Cir. 1974); *United States v. Croft*, 750 F.2d 1354, 1361-62 (7th Cir. 1984); *United States v. May*, 625 F.2d 186, 191-92 (8th Cir. 1980); *Schwartz*, 785 F.2d at 680 (9th Cir. 1986).

1977) (union official violated § 302 by accepting from a hotel " thing[s] of value" in the form of discounted hotel rooms); *cf. United States v. Freeman*, 208 F.3d 332, 341 (1st Cir. 2000) (access to property a " thing of value" under 18 U.S.C. § 666).

**Gag Clause.** UNITE demands control over Mardi Gras' speech and actions regarding unionization, namely that it " not do any action nor make any statement that will directly or indirectly state or imply any opposition" to UNITE. (MOA ¶ 4). This is exceedingly valuable to UNITE, as it silences a persuasive party that would otherwise oppose the union during an organizing campaign and prevents targeted employees from learning about the disadvantages of unionization.

The Eleventh and Seventh Circuits have held that control over the speech of an adverse party is a " thing of value." *See Nilsen*, 967 F.2d at 542-43 (testimony of a government witness, which a defendant wished to silence, a " thing of value" to the defendant under 18 U.S.C. § 876); *Zouras*, 497 F.2d at 1121 (same). Indeed, noncompetition agreements are types of property. *See United States v. Tropiano*, 418 F.2d 1069, 1076 (2d Cir. 1969). The control that UNITE seeks over Mardi Gras' speech is a " thing of value" under *Nilsen* and *Zouras*.

C. *Union Receipt of Valuable Organizing Assistance Is Not Permitted By § 302(c)*

The three types of organizing assistance UNITE demands are not covered by the nine statutory exemptions of § 302(c). This is significant because § 302 prohibits employer delivery of anything of value to unions *except* as permitted by § 302(c). *See* p. 4, *supra*. The " philosophy underlying § 302 is prohibitory, rather than permissive. The Act permits only the exception; it does not permit the general and prohibit the exception." *Bey v. Muldoon*, 217 F. Supp. 401, 403 (E.D. Pa. 1962); *accord Costello*, 547 F.2d at 1273 (only " in certain explicitly, statutorily defined instances exceptions to this general prohibition exist"). That Congress did not include an exemption for organizing assistance in § 302(c) means that no such exemption is intended—*expressio unius est exclusio alterius. Cf. Florida Right to Life, Inc. v. Lamar*, 273 F.3d 1318, 1327 (11th Cir. 2001) (statutory exemptions to a ban

-7-

on certain contributions means no additional exemptions to ban were intended).

C. *Information, Use of Property, and Gag-Clauses Have Monetary Value*

UNITE argues that the organizing assistance it demands is not a " thing of value" because it lacks monetary value. This argument fails because § 302 does not require monetary value and, even if it did, the employer assistance that UNITE seeks has significant monetary value to the union.

Foremost, the Eleventh Circuit has twice recognized that " value" in the phrase " thing of value" is not limited to monetary worth, but is measured subjectively. *See Moore*, 525 F.3d at 1048; *Nilsen*, 967 F.2d at 542. The Second, Fifth, Sixth, and Ninth Circuits have reached similar conclusions.[6] Indeed, the definition of " value" is the " significance, desirability, or utility of something." *Black's Law Dictionary* 1550 (8th ed. 2004). The Fourth Circuit' s conclusion in *Adcock v. Freightliner, LLC*, 550 F.3d 369 (4th Cir. 2008), that the felony provisions of § 302(d) limit " value" to monetary worth is erroneous. That § 302(d) provides for *additional* criminal penalties if the value of a thing exceeds $1,000 does not change the fact that *no monetary value* is required by the statute to establish a misdemeanor violation of § 302(d) or civil violation of § 302(e). 29 U.S.C. §§ 186(d)-(e).

Even if monetary value were required to establish a civil violation of § 302(e) (which it is not), employer assistance with organizing more dues-paying members has great monetary value to UNITE. It will both reduce UNITE' s organizing expenses and likely generate additional dues revenues for the union. Things that assist organizing are just as valuable to unions as cash subsidies for organizing.

UNITE provided valuable consideration for the assistance, including expending over $100,000 in time and money on a political campaign for Mardi Gras. (*See* Joint Sch. Rpt., *2) (Doc. 24 in *UNITE HERE*). The monetary value of the organizing assistance is at least equal to the value of the consideration UNITE provided for it.

---

[6] *See Roth*, 333 F.2d at 453; *Marmolejo*, 89 F.3d at 1191; *Gorman*, 807 F.2d at 1305; *Schwartz*, 785 F.2d at 680.

Certainly, the information, use of property, and gag-clause that UNITE seeks in this case are not completely *worthless* to the union. UNITE's argument thereby fails, as the civil and misdemeanor provisions of §§ 302(e) and (d) do not require any minimum monetary value to establish a violation.[7]

## II.   Enforcing § 302 Will Advance the Statute's Legislative Purpose

1. Section 302 is "a conflict-of-interest statute." *United States v. Browne*, 505 F.3d 1229, 1248 (11th Cir. 2007). Its purpose is "to insure honest, uninfluenced representation of employees." *Quinn*, 514 F.2d at 1259 (quotation omitted).

Unions are enabled by federal law to "exclusively represent" employees in collective bargaining with their employer. 29 U.S.C. § 159(a). This representation creates a fiduciary relationship, akin to that between attorneys and clients or trustees and beneficiaries. *See Air Line Pilots v. O'Neill*, 499 U.S. 65, 74-75 (1991).

Congress recognized union receipt of anything of value from an employees' employer creates a conflict of interest. *See, e.g., United States v. Lanni*, 466 F.2d 1102, 1104-05 (3d Cir. 1972) (discussing legislative history). "For centuries the law has forbidden any person in a position of trust to hold interests or enter into transactions in which self-interest may conflict with complete loyalty to those whom they serve." *Id.* at 1104 (quoting S. Rep. No. 86-187 (1959), *reprinted* 1959 U.S.C.C.A.N. 2318, 2330). For example, "a lawyer knows full well that he, representing a client, would not take a gift from the opposition." 92 Cong. Rec. 5428 (Sen. Hatch). Congress was concerned about "corruption of collective bargaining through bribery of employee representatives by employers," "extortion by employee representatives," and abuse of employee welfare funds. *Arroyo*, 359 U.S. at 425-26.

---

[7] UNITE's claim that a thing must have value to entities *other than* a union under § 302 is belied by the plain language of the statute, which prohibits delivery of any "thing of value . . . *to* any labor organization." 29 U.S.C. § 186(a)(2). *Cf. United States v. Ostrander*, 999 F.2d 27, 31 (2d Cir. 1993) ("it is enough if the item received was regarded as a benefit by the recipient, whether or not others might have taken a different view of its value").

In 1947, Congress dealt with this conflict of interest problem by broadly prohibiting employers from delivering anything of value to the union representative of their employees, except as permitted in § 302(c). *See Lanni*, 466 F.2d at 1104-05. "The propriety of any gift to a fiduciary with whose beneficiaries the donor is apt to come into competition, is surely open to scrutiny, and it is a reasonable way of dealing with the evils that may be involved to taboo all." *United States v. Ryan*, 232 F.2d 481, 483 (2d Cir. 1956) (per curiam).

In 1959, Congress strengthened § 302 in the Labor-Management Reporting and Disclosure Act, Pub. L. 86-257, 73 Stat. 519. Among other things, § 302's prohibitions were extended from current union representatives to any union that "seeks to represent" an employer's employees. 29 U.S.C. § 186(a)(2). The intent was to preclude collusion prior to a union organizing an employer's employees. *See United States v. Pecora*, 798 F.2d 614, 622-24 (3d Cir. 1986).

2. "Legislative history confirms that a literal construction of [§ 302] does no violence to common sense." *Arroyo*, 359 U.S. at 424. Nothing in § 302's legislative history supports not enforcing § 302 as written against "thing[s] of value" that assist organizing. "Judicial adherence to the intention of Congress in enacting § 302 requires strict enforcement of the purposefully rigid structure provided in the section." *Costello v. Lipsitz*, 547 F.2d 1267, 1273 (5th Cir. 1977) (quotation omitted).

Indeed, § 302 is intended to apply to union organizing. *Cf.*, *Pecora*, 798 F.2d at 622-24. Congress expressly made it unlawful in § 302(a)(3) for employers to deliver things of value to employee groups for the purpose of "influenc[ing] any other employee in the exercise of the *right to organize* and bargaining collectively through representatives of their own choosing." 29 U.S.C. § 186(a)(3) (emphasis added).

3. By contrast, not enforcing § 302 with respect to things valuable for organizing will undermine the statute. A union self-dealing for employer assistance with organizing is no different from a union self-dealing for cash or any other thing of value. The conflict of interest and potential for harm to employees is the same.

-10-

Persuasive on this point is the Ninth Circuit's rationale for finding "assistance in arranging for the merger of [two unions]" to be a "thing of value" to union trustees under 18 U.S.C. § 1954:

> Congress was concerned with violations of trust and fiduciary duties by union fund trustees . . . . A violation of trust which is influenced by the offer of an intangible service is no less damaging to trust fund beneficiaries than if the influence was in the form of a cash kickback. The significant factor is that the trustee sufficiently valued the thing offered to compromise his integrity and position.

*Schwartz*, 785 F.2d at 680. So too here, the dispositive factor is that unions sufficiently value employer assistance with organizing to be compromised by it. UNITE's conduct proves the point, as the union was willing to conduct an expensive political campaign and guarantee Mardi Gras labor peace as a *quid pro quo* for organizing assistance.[8] Employers can clearly influence unions with promises of information about their nonunion employees, free use of their property for organizing, and gag-clauses on speech about unionization. As such, § 302's legislative purpose requires that the statute be enforced with respect to these "thing[s] of value . . . to any labor organization." 29 U.S.C. § 186(a)(2).

### III.    Enforcing § 302 Against UNITE's Demands for Information, Access, and A Gag-Clause Will Not Cause Any Absurd Results

UNITE's principal defense is that absurd results will occur if § 302 is enforced in this case. The Eleventh Circuit maintains an "exacting standard for finding absurdity," under which "giving the words of a statute their plain and ordinary meaning [must] produce a result that is not just unwise but is clearly absurd." *CBS*

---

[8] Labor peace is one of the very things Congress sought to prevent unions from selling to employers under § 302. *See* S. Rep. No. 98-225 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3477 (Section 302 intended to "prohibit[ ], among other things, the buying and selling of labor peace"); *Butchers Union, Local No. 498 v. SDC Inv., Inc.*, 631 F. Supp. 1001, 1008 (E.D. Cal. 1986) ("Congress believed a 'violation of § [302] corrupts legitimate labor management relations, and leads to 'labor peace being sold to businesses.' ") (quotation omitted).

-11-

*Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1228 (11th Cir. 2001). The mere ability of a party to " craft a hypothetical that produces a result we might find anomalous is insufficient reason for disregarding the terms of the statute." *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1238 (11th Cir. 2005).

    A. *That Labor Contracts Are Procedurally Enforceable Under § 301 Does Not Mean That An Agreement is Substantively Lawful Under § 302.*

    UNITE claims that it would be absurd to find the MOA unlawful under § 302 because organizing agreements, like any other " contracts between an employer and labor organization," are enforceable under § 301 of the LMRA, 29 U.S.C. § 185. Thus, UNITE argues that a contract cannot be illegal because contracts are enforceable instruments. This does not rise to level of sophistry, and itself leads to an absurd result: unions and employers could abrogate § 302 by merely agreeing to do things in contracts. For example, a union could accept cash payoffs from an employers, if it agreed to the bribe in a written contract, under UNITE' s theory.

    In reality, § 302 invalidates terms of labor agreements not compliant with the statute. Sections 302(a) and (b) expressly makes it unlawful for employers and unions to " *agree*" to deliver and receive a " thing of value." (emphasis added). Courts have struck down under § 302 terms of labor agreements, *see Costello,* 547 F.2d at 1278, and arbitration awards arising from these agreements. *See Bugher v. Cons. X-Ray Serv. Corp.*, 705 F.2d 1426, 1435 (5th Cir. 1983); *Jackson Purchase Rural Elec. Coop. Ass' n v. IBEW*, 646 F.2d 264, 267-68 (6th Cir. 1981). It " is inescapably correct . . . that no employer may be required to bargain over or engage in illegal activity even if that activity is necessary to comply with the terms of the bargaining agreement." *BASF Wyandotte*, 798 F.2d at 854.

    For example, collective bargaining agreements (" CBAs") are enforceable labor contracts under § 301 of the LMRA. Yet, " [t]he courts will not enforce an illegal collective bargaining agreement provision which" violates § 302. *Bugher*, 705 F.2d at 1435. Under § 302, " the representatives of the employees, which means the

union, shall not receive a tribute of this kind, even though it may be provided for in a collective bargaining contract." 92 Cong. Rec. 4893 (Sen. Byrd).

The § 301 cases cited by UNITE are inapposite, as none of them addressed whether the agreement' s terms were substantively lawful under § 302. This includes *Retail Clerks v. Lion Dry Goods*, 369 U.S. 17 (1962). The mere fact that UNITE demands " thing[s] of value" from Mardi Gras pursuant to a written contract does not exempt these valuable things from § 302' s prohibitions.

B.    *Enforcing § 302 as Written Against Organizing Assistance Will Protect The Integrity of Collective Bargaining*

UNITE avers that enforcing § 302 in this case will harm collective bargaining. This is untenable, as employer assistance with organizing its nonunion employees has nothing to do with legitimate collective bargaining. UNITE is demanding things of value from Mardi Gras *outside* of a collective bargaining relationship.

Collective bargaining involves a union bargaining with an employer solely as a fiduciary representative of *employee*s with respect to their wages and benefits. *See* 29 U.S.C. § 158(d). This does not violate § 302 because nothing is delivered to the union under § 302(a) that is not exempt under § 302(c). Section 302(a) " does not prohibit the employee himself from accepting money or other things of value if it is directly paid to the employee by the employer." 92 Cong. 4891 (Sen. Byrd). Section § 302(c) exempts employee benefits that result in the delivery of something to their union representative, such as pension fund contributions. *See* 29 U.S.C. § 186(c).

UNITE' s demands for " thing[s] of value" from Mardi Gras for *itself* is antithetical to legitimate collective bargaining. It is akin to an attorney demanding assistance with recruiting more clients from a prospective opposing party. This and all other union self-dealing is strictly prohibited by § 302 to protect the integrity of the process. *See Arroyo*, 359 U.S. at 425. " Collective bargaining is a sham when the employer sits on both sides of the table by supporting a particular organization with which he deals." *NLRB v. Penn. Greyhound Lines*, 303 U. S. 261, 268 (1938).

-13-

C. *Enforcing § 302 As Written is Consistent with the NLRA*

UNITE argues that enforcing § 302 in this case is inconsistent with the NLRA. This is the height of effrontery, as the very purpose of the MOA is to *supplant* the NLRA's procedures with a private agreement.

" By its plain terms . . . the NLRA confers rights only on *employees,* not on unions or their nonemployee organizers." *Lechmere v. NLRB*, 502 U.S. 527, 532 (1992). To effectuate employee free choice in organizing, the NLRA provides for secret-ballot elections in § 9(a) of the Act, 29 U.S.C. § 159(a),[9] and an " uninhibited, robust, and wide-open debate" between employers and unions under § 8(c) of the Act, 29 U.S.C. § 158(c), *Chamber of Commerce v. Brown*, 128 S. Ct. 2408, 2413-14 (2008) (quotation omitted). By contrast, the NLRA does not grant unions any right to assistance from employers with organizing their employees. *See Lechmere,* 502 U.S. at 532-34 (unions have no right under NLRA to use employer property); 29 U.S.C. § 158(c) (employers permitted to engage in non-coercive speech about unionization); *Always Care Home Health Serv.*, 1998 WL 2001253 (NLRB GG 1998) (unions have no right to information about nonunion employees from employers).[10]

The MOA turns the NLRA's organizing process on its head. It prohibits Mardi Gras from petitioning the NLRB for secret-ballot elections and from speaking about unionization. (MOA, ¶ 9). The MOA even prohibits the filing of charges with the NLRB to remedy violations of employee rights. (*Id*). These employee protections are replaced with employer delivery of valuable assistance to the union. The NLRA's " bottom-up" organizing process is upended into a " top-down" process.

_____

[9] 29 U.S.C. § 159(a); *see NLRB v. Gissel Packing Co.*, 395 U.S. 575, 602 (1969); *Dana Corp.*, 351 N.L.R.B. No. 28, * 5-7 (2007).

[10] Enforcing § 302 will not invalidate the employee lists used in NLRB elections. This event does not implicate § 302 because *the NLRB* provides the list to the union, not the employer. *See* NLRB Casehandling Manual, ¶ 11312.2. In any event, § 302(c)(2) exempts anything provided to a union pursuant to an order of the NLRB. *See J.P. Stevens & Co. v. NLRB*, 632 F.2d 322, 328 (4th Cir. 1980).

Congress prohibited such top-down organizing in § 302 by prohibiting employers from delivering any " thing of value" to: (1) " any labor organization" that " *seeks to represent*, or would admit to membership, any of the employees of such employer," 29 U.S.C. § 186(a)(2); and, (2) an " employee or group or committee . . . to influence any other employees in the exercise of the *right to organize* and bargaining collectively through representative of their own choosing." 29 U.S.C. § 186(a)(3) (emphasis added). In these unmistakable terms, Congress prohibited unions from demanding anything of value from employers of employees they seek to organize.

Congress also intended for § 302' s prohibitions to be independent of those of the NLRA. *See Hospital Employees' Div. of Local 79, SEIU v. Mercy-Memorial Hosp. Corp.*, 862 F.2d 606, 608 (6th Cir. 1988).[11] The NLRB has no jurisdiction over § 302. A violation of § 302 does not require any proof of a violation of the NLRA. " Both § 302 of LMRA and § 8 of the NLRA may make similar conduct unlawful, but each provides an independent remedy." *Id.; cf. Int' l Longshoremen & Warehousemen' s Union v. Juneau Spruce Corp*, 342 U.S. 237, 244 (1952) (remedies of § 303 of the LMRA, 29 U.S.C. § 187, independent of § 8 of the NLRA).

Thus, that UNITE' s organizing agreement may also violate the NLRA does not justify not enforcing § 302 against it.[12] *See Mercy-Memorial*, 862 F.2d at 608 (§ 302 enforceable against conduct lawful under § 8 of NLRA). " [S]o long as there is no 'positive repugnancy' between two laws, a court must give effect to both." *Connecticut Nat' l Bank v. Germain*, 503 U.S. 249, 254 (1992); *cf. United States v. Batchelder*, 442 U.S. 114, 122 (1979) (that two statutory prohibitions apply to the same conduct does not justify not enforcing one of the statutes).

---

[11] *Further proceedings*, 492 U.S. 914 (*judgment vacated on other grounds*), *on remand*, 881 F.2d 1076 (6th Cir. 1989) (table) (reinstating § 302 ruling).

[12] The legality of organizing assistance under the NLRA is an open and contentious issue. *Cf.*, Charles I. Cohen et al., *Resisting its Own Obsolescence-How the National Labor Relations Board Is Questioning the Existing Law of Neutrality Agreements*, 20 Notre Dame J.L. Ethics & Pub. Pol' y, 521 (2006).

**IV.** *Sage* **and** *Adcock* **Are Distinguishable, Contrary to the Law of This Circuit, and Unpersuasive**

UNITE relies on decisions from the Third and Fourth Circuits, *Hotel Employees Union v. Sage Hospitality*, 390 F.3d 206 (3d Cir. 2004) and *Adcock v. Freightliner, LLC*, 550 F.3d 369 (4th Cir. 2008). *Sage* held that an organizing agreement is not a "thing of value" under § 302.[13] *Adcock* held that union access to an employer's employees did not violate § 302.[14] These decisions are not binding on this Court. As established below, the cases are (1) distinguishable; (2) conflict with the law of this circuit (and other circuits); and (3) are unpersuasive.

1. *Adcock* is inapposite because the crux of the decision is that § 302 requires monetary value, and that the union access at issue lacked such value. 550 F.3d at 374-75. For this reason, the court declined to "decide the extent to which intangible items may have value under § 302 or any other criminal statute prohibiting the delivery, conveyance, or acceptance of a 'thing of value.'" *Id.* at 375 n.3.

Even if this Court accepted *Adcock's* erroneous holding that § 302 requires monetary value (which it does not), *Adcock's* conclusion cannot be adopted here. As previously explained, information, use of property, and the gag-clause have monetary value. *See* pp. 8-9, *supra*. UNITE itself asserted in *UNITE HERE* that a lack of this assistance is resulting in "increased organizing expenses and lost revenues for the Union," (Compl., ¶ 27) (Doc. No. 1 in *UNITE HERE*), and that the union and its members spent over *$100,000* in time and money on a political campaign in exchange for the assistance. (Joint Sch. Rpt., * 2) (Doc. No. 23 in *UNITE HERE*). The assistance clearly has monetary value to UNITE.

_____

[13] *Patterson v. Heartland Indus. Partners*, 428 F.Supp. 2d 714 (N.D. Ohio 2006) (moot on appeal), adopted the conclusion of *Sage* without further analysis.

[14] Information about employees was *not* at issue in *Adcock*. While a gag-clause on employer speech was before the court, it was not directly addressed. The court addressed only "union access to employees." 550 F.3d at 374.

*Sage* is distinguishable because the Third Circuit addressed whether an organizing agreement was *itself* a " thing of value," instead of addressing the specific types of assistance individually. The Court framed the issue as whether a " *labor agreement* governing recognition of a labor union amounts to illegal labor bribery," and held that " [t]he *agreement here* involves no payment, loan, or delivery of anything." 390 F.3d at 219 (emphasis added).

Here, it is not alleged that the MOA is itself a " thing of value" under § 302. UNITE is violating § 302 by demanding three specific " thing[s] of value" from Mardi Gras: information; a use of property; and a gag-clause on communications. *Sage* is inapposite because the court did not address these three specific things, but instead opined on organizing agreements in their totality.

2. To the extent that *Sage* and *Adcock* are not distinguishable, their cramped construction of " thing of value" conflicts with the law of this and other Circuits. The Supreme Court has repeatedly held that § 302 is a broad prohibition. *See Demisay*, 508 U.S. at 585; *Arroyo*, 359 U.S. at 420; *Ryan*, 350 U.S. at 304-05. The Eleventh Circuit has held: (i) that the term " thing of value" encompasses intangibles, *see Nilsen*, 967 F.2d at 543; *Moore*, 525 F.3d at 1048, in conformity with the Second, Fifth, Sixth, Seventh, Eighth, Ninth, and D.C. Circuits, *see* pp. 5-6, *supra*; (ii) that a discounted use of property is a " thing of value" under § 302, *see Schiffman*, 552 F.2d at 1126; *see also BASF Wyandotte*, 798 F.2d at 856 & n.5 (5th Cir. 1977) (same); *cf. Freeman*, 208 F.3d at 341 (1st Cir. 2000); and, (iii) that control over the speech of an adverse party is a " thing of value," *see Nilsen*, 967 F.2d at 542-43; *see also Zouras*, 497 F.2d at 1121 (7th Cir. 1974) (same). The Supreme Court has held that information constitutes " property," *Carpenter*, 484 U.S. at 26, and the Second, Sixth, and Ninth Circuits have held it to be a " thing of value." *See Girard*, 601 F.2d at 71; *Barger*, 931 F.2d at 368; *Sheker*, 618 F.2d at 609. To the extent that *Sage* and *Adcock* hold to the contrary, the decisions must be

-17-

rejected as in conflict with the law of this Circuit and other courts.[15]

3. Even if one ignored prior precedents, *Adcock* and *Sage* are unpersuasive because they require accepting the incredible proposition that employer assistance with organizing more members constitutes *nothing of any value* to unions, i.e., that it is *worthless* and amounts to *nothing*.[16] This is untenable on its face. How can information, use of physical property, and control over communications be nonexistent? How can these things be worthless if unions aggressively demand, provide consideration for, and use these things to increase their membership ranks? To merely pose these questions is to answer them.

This case illustrates the point. UNITE is suing Mardi Gras for information about its employees, use of its property for organizing, and a gag-clause. UNITE claims that it spent over $25,000 in legal fees on this suit on 23 March 2009. (Joint Sch. Rpt., * 2) (Doc. 23 in *UNITE HERE*). UNITE also expended over $100,000 in time and money on a political campaign in exchange for these things. (*Id.*). Yet, to embrace the decisions in *Adcock* and *Sage*, one would have to believe that UNITE expended these resources in pursuit of nothing. It defies common sense.

In reality, employer assistance with organizing has the greatest value to unions. Organizing is a top priority for unions, as each additional member results in more dues money for union coffers. Employer assistance in gaining more members is as valuable to a union as assistance with gaining more customers is to a business.

---

[15] That some of the cited cases construe " thing of value" in statutes other than § 302 is irrelevant. The Eleventh Circuit has held that the phrase is a " term of art," " a clearly defined term," *Nilsen*, 967 F.2d at 543, and " unambiguously covers intangible considerations." *Moore*, 525 F.3d at 1048; *accord Girard*, 601 F.2d at 71. Nothing in § 302 restricts the plain meaning of " thing of value."

[16] *See Sage*, 390 F.3d at 218 (" The agreement here involves no payment, loan, or delivery *of anything*") (emphasis added); *Adcock*, 550 F.3d at 376 (same); *id.* at 374 (access to employees " do[es] not involve the delivery of either tangible or intangible items to the Union"); *id.* at 375 (" allowing the Union access to Freightliner' s employees, ha[s] *no such value whatsoever*") (emphasis added).

-18-

In recent years, unions have aggressively demanded organizing assistance from employers due to union inability to convince employees to voluntarily choose unionization under the procedures favored by the NLRA, *i.e.*, secret-ballot elections that feature an open debate about unionization.[17] To obtain the employer assistance they covet, unions have resorted to pressuring employers with extensive " corporate campaigns," and/or offering employers pre-negotiated bargaining concessions, guarantees of labor peace, and other consideration.[18]

It is beyond cavil that employer assistance with organizing has great value to unions. Amazingly, the Third and Fourth Circuits recognized that organizing agreements " serve the interests of . . . the Union," *Adcock*, 550 F.3d at 372, and " benefit" unions with " efficiency and cost saving," *Sage*, 390 F.3d at 218. Yet, the courts still held that this type of assistance is not a " thing of value . . . to any labor organization" under § 302(a)(2). The plain meaning of the statute was not only disregarded, but turned on its head.

*Sage* and *Adcock* cannot be adopted because they tear a gaping hole in § 302 by exempting things of the greatest value to unions from the statute. This does exceptional violence to the text of § 302, which already includes nine statutory exemptions in § 302(c). It also undermines the statute' s purpose, as union self-dealing for " thing[s] of value" for organizing creates the same conflict of interest as union self-dealing for money or any other thing of value.

---

[17] *See* Laura J. Cooper, *Privatizing Labor Law: Neutrality/ Check Agreements and the Role of the Arbitrator*, 83 Ind. L.J. 1589, 1591-92 (2008); note XX, *supra*.

[18] *See* Daniel Yager & Joseph LoBue, *Corporate Campaigns and Card Checks: Creating the Company Unions of the Twenty-First Century*, 24 Empl. Rel. L.J. 21 (Spring 1999); *Pichler v. UNITE*, 228 F.R.D. 230, 234-40 (E.D. Pa. 2005)*, aff' d*, 542 F.3d 380 (3d Cir. 2008) (corporate campaign for an organizing agreement); *Smithfield Foods v. UFCW*, 585 F. Supp. 2d 789, 795-97 (E.D. Va. 2008) (same); *Adcock*, 550 F.3d at 372 (union secretly agreed to numerous pre-negotiated employee wage and benefit concessions in exchange for organizing assistance)

Courts have rejected demands for exemptions to § 302 and similar conflict-of-interest statutes.[19] So too here, a new judicial exemption for any "thing of value" that assists union organizing should not be carved into § 302. "Courts may not create their own limitations on legislation, no matter how alluring the policy arguments for doing so." *Brogan v. United States*, 522 U.S. 398, 408 (1998).

## CONCLUSION

Information about nonunion employees, use of property for organizing, and a gag-clause on employer speech are "thing[s] of value . . . to any labor organization" under § 302(a)(2). Union receipt of these valuable things is not permitted under § 302(c). Accordingly, UNITE's demands for these things is unlawful under § 302.

Dated: 9 December 2009          Respectfully submitted,

Boca Raton, Florida

| | |
|---|---|
| *(signature)* | |
| DANIEL R. LEVINE, ESQ. | William L. Messenger |
| Florida Bar No. 0057861 | Virginia Bar No. 47179 |
| Email: drlevine@sbwlawfirm.com | *(Pro Hac Vice Motion Filed)* |
| SHAPIRO, BLASI, WASSERMAN, & | E-mail: wlm@nrtw.org |
| GORA, P.A. | c/o National Right to Work Legal |
| 7777 Glades Road, Suite 400 | Defense  Foundation |
| Boca Raton, Florida 33434 | 8001 Braddock Road, Suite 600 |
| Telephone: (561) 477-7800 | Springfield, Virginia 22160 |
| Facsimile: (561) 477-7722 | Telephone: (703) 321-8510 |
| *Co-counsel for Intervenor* | Facsimile:(703) 321-9319 |
| | *Co-counsel for Intervenor* |

---

[19] *See Salinas v. United States*, 522 U.S. 52, 57, 118 S. Ct. 469, 473-74 (1997) (rejecting judicially created "federal funds" limit to prohibition on government officials accepting "anything of value" because "[t]he statute's plain language fails to provide any basis for limiting [it] to bribes affecting federal funds"); *Iron Workers v. Bechtel Power*, 463 F. Supp. 643 (E.D. Mich. 1978), *aff'd*, 634 F.2d 258 (6th Cir. 1981) (refusing to exempt "industry steward" fund from § 302); *Conditioned Air & Refrigeration Co. v. Plumbing & Pipe Fitting Labor Mgmt. Relations Trust*, 159 F. Supp. 887, 900 (S.D. Cal. 1956) (refusing to exempt "labor management plan" from § 302).

## **CERTIFICATE OF SERVICE**

I hereby certify that on 9 December, 2009, the foregoing document was conventionally filed with the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via facsimile and regular U.S. Mail.

DANIEL R. LEVINE, ESQ.

## SERVICE LIST

*Hollywood Greyhound Track, Inc.* v. *UNITE HERE Local 355,*
Case No. 09-61760-Civ-Zloch / Rosenbaum
United States District Court, Southern District of Florida

Noah Scott Warman, Esq.
E-Mail:  nwarman@sugarmansusskind.com
Sugarman & Susskind, P.A.
100 Miracle Mile, Suite 300
Coral Gables, FL  33134
Telephone:  (305) 529-2801
Facsimile:  (305) 447-8115
Counsel for Defendant Unite Here

Robert L. Norton, Esq.
E-Mail:  rnorton@anblaw
Allen, Norton, & Blue, P.A.
121 Majorca Avenue, Suite 300
Coral Gables, Florida 33134
Telephone:  (305) 445-7801
Facsimile:  (305) 442-1578
Counsel for Defendant Mardi Gras

Daniel R. Levine, Esquire
E-Mail:  drlevine@sbwlawfirm.com
Shapiro, Blasi, Wasserman & Gora, P.A.
777 Glades Road, Suite 400
Boca Raton, FL  33434
Telephone:  (561) 477-7800
Facsimile:  (561) 477-7722
Counsel for Proposed Intervenor